IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ROSE BUZACHERO )
)
v. ) No. 3:13-0199
) Judge Nixon/Bryant
SOCIAL SECURITY ADMINISTRATION )

To: The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's applications for disability insurance benefits and supplemental security income, as provided under Titles II and XVI of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 16), to which defendant has responded (Docket Entry No. 19). Plaintiff has further filed a reply in support of her motion. (Docket Entry No. 19) Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 12),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff filed her applications for benefits in October and November of 2009,

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

alleging disability onset as of January 1, 2003, but subsequently amending that alleged onset date to April 15, 2008. (Tr. 16, 34-35) Her applications were denied at the initial and reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of her case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on July 1, 2011, when plaintiff appeared with counsel and gave testimony. (Tr. 33-54) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until July 22, 2011, when he issued a written decision finding plaintiff not disabled. (Tr. 16-26) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through April 30, 2015.

2. The claimant has not engaged in substantial gainful activity since April 15, 2008, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: hypertension, congestive heart failure, obesity, psychotic disorder, and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) reduced by the following limitations: can understand, remember, and carry out only simple tasks and instructions; interact[ion] with the public should be on a superficial and occasional basis; interaction with co-workers should be only in small groups; she is prone more appropriately to occupations that deal with handling objects as opposed to interacting with people; and she can adapt to only infrequent changes.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on August 19, 1957 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2003, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-20, 24-26)

On February 20, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following statement of facts is taken from plaintiff's brief, Docket Entry No. 13-1 at pp. 3-4:

Plaintiff, Rose Buzachero, was born on August 19, 1957, was 51 years old on her amended disability onset date, and defined (for purposes of vocational analysis) as approaching advanced age individual under the nomenclature of the Social Security Regulations. See 20 CFR 404.1563 and 419.963. She is presently 55 years of age.

The ALJ determined the Plaintiff has severe impairments that include hypertension; congestive heart failure; obesity; psychotic disorder and bipolar disorder. (R. 18)

The medical evidence shows that on November 23, 2003, the claimant was admitted to the Moccasin Bend Mental Health Institute with a discharge diagnosis of bipolar disorder, manic with psychosis. Her GAF was initially 6 and when she was discharged, it was 50. When the claimant went to Dale Hollow Mental Health on November 26, 2003, the problems noted were anxiety; depression; panic attacks; racing thoughts audio and visual hallucinations; talking to self and OCD. On December 8, 2003, her GAF was 45. Again on April 16, 2008, the problems noted were anxiety, depression, racing thoughts, audio and visual hallucinations, OCD and talking to self. Her diagnosis on April 16, 2008 included bipolar disorder; hypertension; heart valve that does not open/close correctly. She had buried her husband on April 15, 2008. (R. 231, 232, 256, 274, 275, 278)

A CRG dated December 18, 2007 was among the records of Volunteer Behavioral Healthcare Center. Notes show that depression interferes with ability to complete activities of daily living. It was noted she isolates, stay to self due to anxiety. It was further noted she "can't stay focused on anything" as anxiety interferes. It was also noted that anxiety increases

with stress and change. (R. 252-254)

On October 20, 2009, she was a patient at the Middle Tennessee Medical Center wherein the physician noted the following conclusion: 1) echocardiogram is consistent with multiple echos, probably from interstitial lung condition or COPD, 2) mild enlargement of left atrium with left ventricular hypertrophy, suggesting hypertensive heart condition, 3) mild mitral and tricuspid regurgitation; mitral regurgitation of 2+ and 4) ejection fraction is close to 63% by visual estimation. (R. 313)

The claimant treated at the Byrdstown Medical Center on January 15, 2010. The physician's assessment was bipolar, manic depressive with psychosis. It was also noted that she had hypertension. Among her multiple medications were Klonopin, Inderal IA, Hydrochlothiazide; Pravastatin; Wellbutrin; Zantac; Citracal and Symbyax. The notes also state that she had been hospitalized in the past for depression. She was also noted to have hyperlipidemia along with hypertension. Her weight was noted to be 197 pounds. (R. 346, 348, 351, 371, 376)

The Byrdstown Medical Center records depict an assessment on March 4, 2011 of essential hypertension. The notes provide that she is compliant with her medications. On August 20, 2010, the assessment includes bipolar disorder, manic depressive with psychosis and hypertension, essential. (R. 449-461)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the

correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the record contains substantial evidence that could have supported an opposite conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1) A claimant who is engaging in substantial gainful activity will not be found

to be disabled regardless of medical findings.

2) A claimant who does not have a severe impairment will not be found to be disabled.

3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4

7

(S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff first contends that the ALJ erred in failing to give appropriate weight to the Medical Source Statements (physical and mental) of her treating physician, Dr. Larry M. Mason, M.D., of the Byrdstown Medical Center. Plaintiff argues that the opinions expressed by Dr. Mason in those statements were "entitled to controlling weight over the non-treating sources in the file." (Docket Entry No. 13-1 at 9) However, a treating physician's opinion is not entitled to controlling weight merely because it stands alone in the record as a treating source opinion, whereas the other opinion evidence comes from non-treating sources. Rather, as plaintiff recognizes in her brief, a treating physician's opinion is only entitled to controlling weight if it is well supported and not inconsistent with other substantial evidence in the case record. Id. at 8 (citing Soc. Sec. Rul. 96-2p). In a thorough review of Dr. Mason's opinions in light of the other evidence contained in -- or, in some instances, absent from -- the record, the ALJ in this case found that Dr. Mason's opinions were not supported by his treatment notes, and were not consistent with other substantial evidence of record including plaintiff's own testimony and the treatment records from Dale Hollow Mental Health. (Tr. 21-22) Included in this review are the following salient

8

comparisons:

> ... Dr Larry Mason, a treating physician at Byrdstown Medical Center, noted the claimant suffered from back pain, knee pain, and foot pain. ... He noted the claimant could never finger, feel, and push/pull with either hand. (The claimant testified that she could use her hands and arms.) ... Dr. Mason's physical assessment mentioned symptoms of knee and foot pain. However, there is no diagnosis from an accepted medical source to establish a severe physical impairment regarding these symptoms. Additionally, the medical evidence showed the claimant has a history of degenerative disc disease, but there is no documentation of any ongoing treatment for this condition. . . .

> ... On April 16, 2008, the claimant reported [to her provider at Dale Hollow that] her husband died and that her anxiety and depression were not too good but her medication was helping. By March 5, 2009, the claimant reported she was not having any depression, anxiety, and irritability. On June 25, 2009, the claimant indicated she had no problems with depression, anxiety, and irritability. The claimant pointed out that she spends a lot of time at home doing chores. However, the claimant missed a number of her mental health appointments and was eventually discharged from Dale Hollow due to a lack of contact on October 23, 2009.

> Also, ... Dr. Mason indicated the claimant has marked [mental] limitations in a number of categories . . . . However, on March 4, 2011, Dr. Mason's treatment records showed the claimant has appropriate affect and demeanor. Dr. Mason stated that the claimant demonstrated good insight and judgment. In addition, the treatment notes from Dale Hollow Mental Health showed the claimant had no more than moderate limitations with consistent global assessment of functioning ratings above 55. Furthermore, Dr. Mason's mental MSS is negatively impacted by the physical MSS he did the same day. For instance, Dr. Mason opined extreme physical limitations with fingering. However, the claimant's testimony contradicted Dr. Mason's opinion in the physical MSS. Thus, little weight is given to the opinion of Dr. Mason's mental assessment.

> ... Furthermore, the course of treatment pursued by the doctor for the claimant's physical and mental impairments has not been consistent with what one would expect if the claimant were truly limited to the very significant

9

extent that the doctor has listed in the medical source statements. . . .

Id.

Respectfully, the undersigned finds that Dr. Mason's opinions were clearly not due controlling weight, and further that the foregoing discussion of those opinions and the record evidence opposed to them is entirely sufficient to support the reduced weight which the ALJ assigned to them. The ALJ's subsequent observation that treating physicians can be inclined to exaggerate their patients' limitations in support of those patients' disability applications does not undermine the ALJ's weighing of this opinion evidence, nor was such observation offered as a reason for discounting Dr. Mason's opinions.[2] Finally, while the finding that "Dr. Mason's mental MSS is negatively impacted by the physical MSS he did the same day" is not a compelling justification, standing alone, for the rejection of the mental assessment, it does not significantly detract from the otherwise well supported weighing of that assessment vis-à-vis Dr. Mason's own treatment records and those from Dale Hollow. Although plaintiff in her reply brief takes issue with the ALJ's reference to a single treatment note as undermining Dr. Mason's opinion, it is clear from the whole of the ALJ's rationale that he viewed the weight of the evidence as supporting the significant, but not disabling, limitations evident from the observations and opinions of the mental health care

---

[2]After making this observation, the ALJ concluded his discussion of Dr. Mason's opinions as follows:

> Unfortunately, when the treatment records do not support the degree of those limitations as listed in the medical source statement, it is difficult to give much weight to the opinion. This appears to be the case with Dr. Mason's medical source statements. Therefore, Dr. Mason's opinions are given little weight.

(Tr. 22)

professionals heard from here (discussed below), rather than the marked limitations assessed by Dr. Mason. Substantial evidence supports this determination.

Plaintiff next argues that the ALJ erred in relying upon her GAF scores above 55 to determine that she had only moderate mental limitations. She further argues that the "moderate" limitations assessed in a Tennessee Clinically Related Group (CRG) form completed by a rater at Dale Hollow are, by the terms of that instrument, similar to the definition of "marked" limitations under agency regulations. Finally, she points out that the state agency psychological consultant whose assessment received "great weight" in the ALJ's decision assessed a marked limitation in her ability to interact appropriately with the general public (Tr. 248), whereas the ALJ determined that she could interact with the public "on a superficial and occasional basis." (Tr. 20) However, none of these arguments have sufficient merit to undermine the ALJ's determination of plaintiff's mental RFC. In the first place, the ALJ's finding of moderate mental limitations was not driven solely by the GAF scores he referenced, but also by the moderate limitations noted in the Dale Hollow CRG form and otherwise supported by their treatment notes (Tr. 21-22), as well as by the assessments of three state agency consultants (Tr. 23) and plaintiff's own reports that her prescription medications provided good relief of symptoms resulting in her ability to live alone and care for her own personal needs (Tr. 24). While plaintiff would equate the "moderate" limitations assessed in the CRG form with marked limitations as such are defined in the disability determination scheme, the fact remains that the "moderate" category on the CRG form is in the middle of the form's five-category scheme for rating limitations, above "mild" and "none" but below "marked" and "extreme." (Tr. 252-53) Lastly, although a marked limitation on interaction with the public was assessed by the state agency consultant whose assessment

11

was given "great weight" by the ALJ, the undersigned can discern no tangible difference between a marked limitation on such interaction and the ALJ's finding that plaintiff is limited to such interactions on only "a superficial and occasional basis" while working in "occupations that deal with handling objects as opposed to interacting with people[.]" (Tr. 20) The ALJ's determination of plaintiff's mental RFC is supported by substantial evidence.

   Plaintiff next argues, in conclusory fashion, that the ALJ erred in his credibility determination and in reaching his RFC determination when he failed to consider the medical evidence which established plaintiff's disability, focusing instead on the limited daily activities she is capable of performing and on the limited medical evidence which supports the finding of no disability. These vague and conclusory arguments are unavailing. Aside from the opinions of Dr. Mason, to which the ALJ gave a thorough review, it is unclear what medical evidence plaintiff makes reference to as the "overlooked ... evidence that fully established that the claimant was disabled on April 15, 2008." (Docket Entry No. 13-1 at 14) Likewise, while the ALJ did make reference to plaintiff's limited daily activities of preparing her own meals and performing some household chores in determining the credibility of her complaints regarding hypertension and congestive heart failure (Tr. 23), he did not rely on her activity level to prop up a finding that the medical evidence does not otherwise support. Rather, it is the balance of the medical and other record evidence, including the state agency physicians' opinions and plaintiff's lack of observed discomfort at the hearing, which the ALJ found to outweigh plaintiff's testimony that she lacks any useful ability to sit, stand, walk, focus her attention long enough to watch a movie, or even pick up around the house. (Tr. 22-24) The ALJ appropriately credited plaintiff's testimony, in light of her obesity and other physical impairments, to the extent that she was determined to be unable to perform

medium or heavy work. (Tr. 24) He likewise appropriately credited her testimony and the medical evidence of record regarding her mental impairments, to the extent that she was significantly limited but not disabled by her bipolar and psychotic disorders. Id. Substantial evidence supports the ALJ's findings of plaintiff's credibility and residual functional capacity.

Plaintiff next argues that the ALJ erred in categorizing her as a younger individual (45 years of age) on her alleged disability onset date, when in fact the onset date was amended from January 1, 2003 to April 15, 2008, by which time plaintiff was 51 years old and properly categorized as an individual closely approaching advanced age. However, as noted by defendant, the ALJ was plainly aware that the alleged onset date had been amended (Tr. 18), specifically found that "[t]he claimant subsequently changed age category to closely approaching advanced age" (Tr. 24), and proceeded to determine that she was not disabled in that category, relying on expert testimony identifying jobs available to "an individual between ages 50 and 53. . . ." (Tr. 49) There is no error here.

Finally, plaintiff asserts that the ALJ failed to consider the Function Reports she submitted to the agency. However, as pointed out by defendant, the ALJ gave explicit consideration to the Function Report which plaintiff principally relies upon (Tr. 19, citing Exh. 6E (Tr. 176-83)), and otherwise sufficiently considered all such allegations in the course of determining her credibility. There is no error here.

In sum, the ALJ's decision is supported by substantial evidence on the record as a whole, and should therefore be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 30th day of December, 2015.

    s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE